## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIE RAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. 3:19-cv-01048-GCS** |
| **SALEM TOWNSHIP HOSPITAL,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Plaintiff Willie Ray brought suit against Defendant Salem Township Hospital on September 26, 2019. (Doc. 1). Plaintiff alleges that her supervisor, Jeffery Longbrake, engaged in verbal and physical sexual harassment against her. *Id*. at p. 3. Defendant employed both Mr. Longbrake and Plaintiff; when Plaintiff attempted to report Mr. Longbrake's harassment, Defendant allegedly retaliated against her by terminating her employment. *Id*. at p. 7. Plaintiff therefore brings two counts against Defendant: Count I alleges that Defendant violated 42 U.S.C. § 2000e ("Title VII") when Mr. Longbrake harassed Plaintiff; Count II claims that Defendant retaliated against Plaintiff in violation of Title VII when it terminated her from her employment. *Id*. p. 5, 7. Now before the Court is Defendant's motion for summary judgment. (Doc. 25). For the reasons delineated below, the motion for summary judgment is **GRANTED in part and DENIED in part.**

FACTUAL ALLEGATIONS

From May 2, 2016 through November 13, 2018, Plaintiff worked as Revenue Cycle Director for Defendant. (Doc. 26, p. 2). Mr. Longbrake began working as interim Chief Financial Officer ("CFO") for Defendant from August 2018 through November 2018. (Doc. 32, p. 1). During that time, Mr. Longbrake was Plaintiff's direct supervisor. (Doc. 26, p. 2).

On August 21, 2018, Mr. Longbrake came to talk with Plaintiff in her office. (Doc. 26, p. 2). While there, Mr. Longbrake told Plaintiff that Defendant's Chief Executive Officer ("CEO") Kendra Taylor wanted to terminate Plaintiff's employment. (Doc. 32, p. 1). He then began asking Plaintiff personal questions regarding where and with whom she lived. *Id.* Eventually, Mr. Longbrake told Plaintiff that he could help keep her job or find new employment; during this conversation, Mr. Longbrake opened his legs, rubbed his genitals over his pants, and invited Plaintiff to join him for drinks at a local hotel where Mr. Longbrake was then staying. *Id.* Plaintiff reported the incident to Health Information Management ("HIM") Director Edyee Bumgarner and told Ms. Bumgarner that she felt too uncomfortable to work late at the same time as Mr. Longbrake. *Id.* at p. 2. Ms. Bumgarner denies that this conversation occurred. (Doc. 26, p. 10).

Mr. Longbrake continued to make unwanted verbal and physical advances to Plaintiff from August through November 2018. (Doc. 26, p. 3). Plaintiff contends that Mr. Longbrake would often "keep her company" if she worked late, comment on her looks, and approach Plaintiff from behind and begin rubbing her shoulders. (Doc. 32, p. 2).

Though Plaintiff attempted to contact the Human Resources ("HR") department about the harassment, HR told Plaintiff that she should speak with Mr. Longbrake to resolve the issue. (Doc. 26, p. 3). When Plaintiff attempted to set up a meeting with Diane Boswell, the Director of Human Resources and Marketing in August 2018, Ms. Boswell told Plaintiff she was busy. *Id.*

Plaintiff claims that she attempted to speak with HR about Mr. Longbrake's behavior again on the morning of November 5, 2018. (Doc. 26, p. 3). During this meeting, Plaintiff stated that Mr. Longbrake raised his voice at her and made her cry at work during a November 1, 2018 interaction. *Id.* However, Ms. Boswell's notes do not indicate that a November 5, 2018 morning meeting occurred. *Id.* at p. 4. Plaintiff attempted to speak with Ms. Boswell again that afternoon; this time, Plaintiff was successful in meeting with her. *Id.* At this meeting, Plaintiff told Ms. Boswell that Mr. Longbrake's behavior caused her stress. *Id.* Ms. Boswell called Ms. Taylor, who then called Mr. Longbrake; Ms. Taylor informed Mr. Longbrake that Plaintiff stated he made her uncomfortable and instructed him to end a later meeting with Plaintiff. *Id.* Mr. Longbrake told Ms. Taylor that he would not meet with Plaintiff unless Ms. Boswell was also present. *Id.* The following day, on November 6, 2018, Plaintiff began a week-long, pre-planned vacation. *Id.*

During this time, Plaintiff also continued working in her normal supervisory position. (Doc. 26, p. 4). On November 2, 2018, Plaintiff called Stacy Allen, a hospital employee who Plaintiff supervised. *Id.* Previously, Ms. Allen had issues with customer

service. *Id*. Plaintiff had therefore requested the Information Technology department to record all incoming and outgoing calls on her phone line. *Id*. The November 2, 2018 phone call was one of those recorded. *Id*.

When Plaintiff called Ms. Allen, the two discussed the conduct of another employee who Plaintiff supervised, *i.e.*, Amy McCowen. (Doc. 26, p. 4). Ms. Allen stated that she believed Ms. McCowen had broken patient confidentiality and violated the Health Insurance Portability and Accountability Act ("HIPAA") by discussing a patient's billing with her husband. *Id*. In response, Plaintiff stated "I want her gone." *Id*.

On November 5, 2018, Ms. Allen reported to HR that she had received an anonymous phone call about Ms. McCowen breaching confidentiality. (Doc. 26, p. 4). Ms. Boswell and Mr. Longbrake called Plaintiff shortly thereafter to discuss the call. *Id*. at p. 5. Plaintiff informed them that she had spoken with Ms. Allen about the anonymous call and promised that she would further investigate Ms. Allen's claims. *Id*. Mr. Longbrake and Ms. Taylor also listened to the full recording of Plaintiff's conversation with Ms. Allen and heard the two conspiring to get Ms. McCowen terminated. *Id*. On November 12, 2018, Ms. Taylor decided to terminate both Plaintiff and Ms. Allen for fabricating an anonymous call. *Id*.

Plaintiff called in sick to work on November 13th. (Doc. 26, p. 5). On November 14, 2018, HR received a fax from Plaintiff's medical provider requesting she be provided a six-week leave of absence because Mr. Longbrake's behavior caused her significant stress. *Id*. Though the request mentioned Mr. Longbrake's verbal abuse, it did not

explicitly describe instances of sexual harassment. *Id*. As Plaintiff continued to avoid coming into work, Defendant mailed Plaintiff a termination letter on November 19, 2018, with an effective date of November 13th. *Id*. at p. 6.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants*, *Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences")(internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While

the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations contained in the pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994)(citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to

rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

**ANALYSIS**

Defendant claims that a reasonable jury could not find that Defendant is liable for sexual harassment against Plaintiff because she cannot demonstrate that she was sexually harassed. (Doc. 26, p. 10). Furthermore, Defendant argues, even if she was harassed, Plaintiff failed to follow Defendant's procedures for documenting the harassment, leaving Defendant without knowledge of the incidents. *Id*. at p. 13. Defendant also asserts that a reasonable jury could not find that it retaliated against Plaintiff because Defendant's termination of her employment was not pretextual. *Id*. at p. 15.

## I.     Plaintiff's Sexual Harassment Claim

Title VII prohibits employers from discriminating against any individual with respect to, *inter alia*, that individual's terms, conditions, or privileges of employment because of that person's sex. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 62 (1986). If a party demonstrates that sex was "a motivating factor for any employment practice, even though other factors also motivated the practice," that party may establish a successful claim for harassment. 42 U.S.C. § 20003-2(a). Accordingly, a plaintiff may establish a Title VII violation by showing that "discrimination based on sex has created a hostile or abusive work environment." *See Meritor*, 477 U.S. at 66. Plaintiff bases her claim for harassment on a hostile work environment. (Doc. 32, p. 3).

To prevail on a hostile work environment claim, Plaintiff must show that: (i) she was subject to unwelcome harassment, (ii) the harassment was based on her sex, (iii) the harassment was so severe or pervasive that it altered the conditions of her employment and created a hostile or abusive atmosphere, and (iv) there is a basis for employer liability. *See, e.g.*, *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020)(applying this test to a claim brought under the Age Discrimination in Employment Act) (internal citations omitted). *See also Prusaczyk v. Hamilton County Coal, LLC*, No. 3:20-CV-73-NJR, 2021 WL 1608736, at *9 (S.D. Ill. Apr. 20, 2021)(applying this test to a sexual harassment case brought pursuant to Title VII)(citing *Tyburski*, 964 F.3d at 601). Even if a basis for employer liability exists, an employer may avoid liability if it did not take adverse employment actions against the plaintiff. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 805-806 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998). If an employer demonstrates that no adverse employment action was taken and provides an affirmative defense, it may escape liability even if the plaintiff proves its prima facie case. *See Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 627-628 (7th Cir. 2019)(citing *Burlington Indus.*, 524 U.S. at 765). Here, Defendant asserts the *Faragher-Ellerth* affirmative defense. (Doc. 26, p. 9). Under this affirmative defense, Defendant must show by a preponderance of the evidence that: (i) it exercised reasonable care to prevent and correct any sexually harassing behavior promptly; and (ii) Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant, or to otherwise avoid harm. *See Hunt*, 931 F.3d at 628 (citing *Burlington Indus.*, 524 U.S. at 765).

Defendant argues that Plaintiff can neither show that she was subject to unwelcome harassment nor show that there is a basis for employer liability. (Doc. 26, p. 9-12). It also asserts that Plaintiff's claim must fail due to the *Faragher-Ellerth* defense. *Id*. at p. 13. Specifically, Defendant claims that Plaintiff failed to follow its internal procedures for addressing sexual harassment. *Id*.

### a. Whether Plaintiff was Subject to Unwanted Sexual Harassment

Defendant points out that the only evidence Plaintiff provides in order to support her claim of sexual harassment is her own testimony alleging a hostile work environment. (Doc. 26, p. 9-10). Though Plaintiff had multiple opportunities to inform HR personnel about Mr. Longbrake's alleged harassment, neither Ms. Boswell nor Ms. Bumgarner indicate that Plaintiff did so. *Id*. at p. 11. Furthermore, when Plaintiff requested leave for stress through her medical provider, she did not mention Mr. Longbrake's sexual harassment. *Id*. at p. 11-12. Instead, the medical provider noted that Mr. Longbrake regularly yelled at Plaintiff, threatened to fire her, and otherwise engaged in non-sexual verbal abuse at the workplace. (Doc. 25, Exh. 2, p. 3). Defendant asserts that because no other witness in this case corroborates Plaintiff's allegations, no reasonable jury could find that Plaintiff experienced unwanted harassment. (Doc. 26, p. 12).

While the above evidence can clearly be used to cast doubt on the credibility of the Plaintiff before a fact-finder, the Court lacks the authority to weigh such evidence at the summary judgment stage. As the movant, Defendant bears the burden of establishing that there is no genuine issue of material fact as to whether Mr. Longbrake sexually

harassed Plaintiff. *See Santaella*, 123 F.3d at 461 (citing *Celotex*, 477 U.S. at 323). The Court draws all reasonable inferences in favor of Plaintiff as the non-moving party. Though "inferences relying on mere speculation or conjecture will not suffice[,]" Plaintiff provides a detailed first-hand account of the sexual harassment she allegedly experienced. *Trade Fin. Partners, LLC*, 573 F.3d at 407 (internal citation omitted). Plaintiff states that Mr. Longbrake made explicit sexual advances towards her on August 21, 2018, including asking Plaintiff out for a drink and referencing a nearby hotel while touching his genitals. (Doc. 25, Exh. 15, 21:6-16). Mr. Longbrake also told Plaintiff that he knew when she would be working late and that he would "come down and keep her company." *Id.* at 23:1-5. Prior to making these comments, Mr. Longbrake informed Plaintiff of a rumor that the CEO wanted to fire her and that Mr. Longbrake could either save her employment with Defendant or provide her a reference for future employment. *Id.* at 22:1-11. Moreover, Plaintiff testified about unwanted physical contact indicating that Mr. Longbrake would place his hands on Plaintiff's shoulders and compliment her on a daily basis beginning in August 2018. *Id.* at 26:17-27-18.

This evidence exceeds speculation or conjecture; instead, the weight of this evidence is dependent on the credibility assigned to those testifying. Weighing contrary testimonial evidence and evaluating credibility is a function for the fact-finder at trial and is not appropriate at the summary judgment stage. *See Anderson*, 477 U.S. at 225. Defendant's evidence, which conflicts with and/or contradicts Plaintiff's version of

events, is therefore insufficient to resolve genuine issues of material fact as to whether Plaintiff suffered unwanted sexual harassment.

### b.  Whether there is a Basis for Defendant's Liability

According to Defendant, an employer must know or should have known of the alleged harassment in order to be found liable. (Doc. 26, p. 12). Though Plaintiff attempted to meet with Ms. Boswell and Ms. Bumgarner, both witnesses allege that Plaintiff did not tell them that she was being harassed. *Id*. Plaintiff's description of the harassment also indicates that Mr. Longbrake acted inappropriately when no one else was around. (Doc. 25, Exh. 15, 24:8-19, 102:9-19). Defendant therefore argues that it lacked the knowledge necessary to take corrective action and cannot be found liable for Mr. Longbrake's sexual harassment. (Doc. 26, p. 12-13).

Congress has directed federal courts to interpret Title VII based on agency principles. *See Burlington Indust.*, 524 U.S. at 754. In *Burlington Indust.*, the Supreme Court held that the necessity of a uniform and predictable standard for determining employer liability in Title VII cases required "the judicial 'creation' of a special federal rule of decision." *Id*. at 755 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 340 (1989). Federal courts are therefore to apply common-law agency principles as outlined in the Restatement (Second) of Agency (1957) (the "Restatement") when determining employer liability for alleged sexual harassment. *See Burlington Indust.*, 524 U.S. at 755 (citing *Meritor*, 477 U.S. at 72).

Section 219(1) of the Restatement outlines the central tenant of liability under agency law: an employer "is subject to liability for the torts of [employees] committed while acting in the scope of their employment." RESTATEMENT § 219(1). Sexual harassment is an intentional tort; thus, in such situations, the employee does not act in furtherance of the employer's objectives, but rather acts for the employee's own personal motives. *See Burlington Indus.*, 524 U.S. at 757 (internal citations omitted). As a general rule, sexual harassment is therefore not within the scope of employment. *Id*. However, an employer may nevertheless be liable for sexual harassment where its own negligence is a cause of the harassment, where the harassing employee uses apparent authority to commit the tort, or where the harassing employee was aided in accomplishing the tort by the "existence of the agency relation." *Id*. at 758-759 (citing RESTATEMENT § 219(2)(b) & (d)). Together, these agency principles stipulate that an employer may be liable for an employee's sexual harassment of another employee when: (i) the employer knew or should have known of the sexual harassment but failed to take action, *see Crenshaw v. Delray Farms*, 968 F. Supp. 1300, 1306 (N.D. Ill. 1997) (internal citations omitted); or (ii) the supervisor's harassment culminates in a tangible employment action against the plaintiff, making the employer strictly liable. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)

An employer may be negligent in controlling workplace conditions, and therefore liable for a hostile work environment, when it does not monitor the workplace, fails to respond to complaints, fails to provide a system for complaints, or effectively discourages compliance. *See Vance*, 570 U.S. at 423. Once an employer is aware of workplace

harassment, it can avoid liability by taking prompt corrective action to prevent the harassment from reoccurring. *See Jajeh v. County of Cook*, 678 F.3d 560, 569 (7th Cir. 2012). However, employers are not considered aware of harassment unless the employee makes "a concerted effort to inform the employer that a problem exists." *Id.* at 569. When the plaintiff's claim for sexual harassment is against a co-worker rather than a supervisor, this is the only basis for which an employer may be liable for the alleged sexual harassment. *See Tyburski*, 964 F.3d at 602. *See also Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018)(finding that employers are "strictly liable for the discriminatory acts perpetrated by supervisors[1] and they are liable for the discriminatory acts of others – coworkers, independent contractors, customers, inmates, etc.—only if they are negligent either in discovering or remedying the harassment."). The primary objective of Title VII is not "to provide redress but to avoid harm." *Faragher*, 524 U.S. at 805-806. Accordingly, an employer which does not construct a reporting system for instances of sexual harassment, train employees about risks of and amelioration for sexual harassment, or take reasonable steps to otherwise prevent harassment may be liable for sexual harassment through its negligence. *See Erickson v. Wisconsin Dept. of Corrections*, 469 F.3d 600, 605 (7th Cir. 2006).

---

[1]     Under Title VII, a "supervisor" is a person with the power to directly affect the terms and conditions of the plaintiff's employment. *See Jajeh*, 678 F.3d at 568. The parties do not dispute that Mr. Longbrake is Plaintiff's supervisor for the purposes of this action. The record further supports this finding. *See, e.g.*, (Doc. 25, Exh. 14, p. 1)(attaching an affidavit from Mr. Longbrake where he acknowledged he was Plaintiff's direct supervisor and that she reported to him).

Plaintiff did not initially report Mr. Longbrake's harassment to HR because when Plaintiff attempted to do so, Ms. Boswell was otherwise occupied. (Doc. 26, p. 10). *See also* (Doc. 25, Exh. 15, 44:3-11). However, on November 5, 2018, Plaintiff told Ms. Boswell that Mr. Longbrake had yelled at her and was causing her significant stress. *Id.* at 45:19-21, 47:17-24. More importantly, Plaintiff testified that she reported the August 21, 2018 with Mr. Longbrake to Ms. Bumgarner immediately after it occurred. *Id.* at 24:13-19; 120:17-22. Ms. Bumgarner was the Health Information Management Director at the time. *Id.* at 25:3-4. Plaintiff states that she told Ms. Bumgarner that Mr. Longbrake touched himself and made her feel uncomfortable. *Id.* at 24:13-19; 120:17-22. She also told Ms. Bumgarner that she did not want to work late on days that Mr. Longbrake worked because Mr. Longbrake indicated he would keep her company. *Id.* Ms. Bumgarner denies that she had this conversation with Plaintiff. (Doc. 26, p. 11). But, this denial leads to an issue of credibility, which is more appropriate for a jury to resolve, and thus cannot be decided on summary judgment. *See Anderson*, 477 U.S. at 225.

Making all reasonable inferences in Plaintiff's favor, a reasonable jury could find that Defendant was negligent in investigating and remedying Mr. Longbrake's behavior. Defendant knew that Plaintiff was sexually harassed when she told Ms. Bumgarner about the incident with Mr. Longbrake. When Mr. Longbrake first harassed Plaintiff on August 21, 2018, Plaintiff chose to report the incident to Ms. Bumgarner because Ms. Bumgarner's office was next door to Plaintiff's office. (Doc. 32, p. 5). Moreover, as Director of Health Information Management, Ms. Bumgarner had the supervisory power necessary to take

action to remedy Mr. Longbrake's behavior. (Doc. 32, Exh. D, p. 2). A reasonable jury could thus find that Defendant was negligent in responding to Plaintiff's claims because according to Plaintiff's version of events, Ms. Bumgarner declined to act on Plaintiff's allegations.

As for Ms. Boswell's handling of the matter, both Plaintiff and Defendant agree that Ms. Boswell was regularly unavailable when Plaintiff attempted to talk with her regarding Mr. Longbrake's behavior. *See* (Doc. 26, p. 11; Doc. 32, p. 3). Despite Plaintiff specifically requesting that Ms. Boswell "make some time" to talk with her about the way Mr. Longbrake treated her, Plaintiff was unable to meet with Ms. Boswell prior to November 5, 2018. (Doc. 26, p. 10). Though Ms. Boswell eventually noted Plaintiff's concerns and called Ms. Taylor to investigate, Plaintiff's statements prior to November 5th arguably provided Ms. Boswell with the predicate necessary to infer that Mr. Longbrake's behavior made Plaintiff uncomfortable much earlier. Ms. Boswell had the knowledge necessary to conduct further investigation or at least meet with Plaintiff to discuss her claims as early as August 2018, even if Plaintiff did not explicitly state that Mr. Longbrake was sexually harassing her. By failing to "make some time" to talk with Plaintiff even after her repeated requests, a reasonable jury could determine that Ms. Boswell was negligent in her response to Plaintiff's complaints.

To the extent that Defendant was not negligent through the responses of Ms. Bumgarner and Ms. Boswell, a reasonable jury could still find the Defendant liable for Mr. Longbrake's behavior. Even if Defendant did not know that Mr. Longbrake sexually

harassed Plaintiff, Defendant may still be liable because Mr. Longbrake was Plaintiff's supervisor. A finding of negligence is only necessary for employer liability when the alleged harasser is the plaintiff's co-worker, rather than the plaintiff's supervisor. *See Johnson*, 892 F.3d at 904. When a supervisor makes a tangible adverse employment decision against a plaintiff, the employer is then strictly liable for the supervisor's harassment. *See Burlington Indus.*, 524 U.S. at 761-762.

The definition of an adverse employment action is broad but is not unlimited. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)(citing *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004)). Typically, adverse employment actions are limited to significant changes in employment status, such as hiring, firing, failing to promote or reassigning a plaintiff to a new position with significantly different responsibilities. *See Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). A decision which results in a significant change of benefits for the plaintiff is also an adverse employment action. *Id.* An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009)(citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). For example, a lateral transfer which does not materially alter a plaintiff's responsibilities, pay or working conditions does not subject the employer to liability under Title VII. *See O'Neal*, 392 F.3d at 911-912 (citing *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744-745 (7th Cir. 2002)).

Though courts must consider the supervisor the operative actor when analyzing an adverse employment action, the ultimate concern is whether that supervisor's harassment "culminates" in the action at issue. *See Faragher*, 524 U.S. at 808. The supervisor's bias towards the plaintiff must be a causal factor of the employment action; the proper framework for this analysis incorporates the torts-law concept of proximate cause. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) (internal citations omitted). The employer bears the burden of demonstrating that it took the adverse employment action against the plaintiff for reasons unrelated to the supervisor's bias. *Id*. at 421. However, the supervisor's bias may remain a causal factor in the employment action if an independent investigation takes the supervisor's report into account without first determining that an adverse employment action is entirely justified apart from the supervisor's recommendation. *Id. See also Gamble v. FCA US LLC*, 993 F.3d 534, 538 n.2 (7th Cir. 2021)(noting that evidence of racial bias in the investigation culminating in termination supported finding that the termination was an adverse employment action) (citing *Levy v. Wilkie*, No. 20-1877, 841 Fed. Appx. 987, 992-993 (7th Cir. Jan. 7, 2021)).

The evidence in the record supports finding that Defendant and Mr. Longbrake took an adverse employment action against Plaintiff. Though Ms. Boswell and Ms. Taylor officially terminated Plaintiff's employment, Mr. Longbrake initially investigated the allegations regarding Plaintiff and Ms. McCowen. (Doc. 25, Exh. 3, p. 3-4). There are few details about how Ms. Boswell, Ms. Taylor, and Mr. Longbrake conducted their investigation into the allegations against Plaintiff, Ms. Allen, and Ms. McCowen. It is also

unclear who interviewed who or how the investigation culminated in the termination of the aforementioned employees.

A reasonable jury may also find that Mr. Longbrake chose to target Plaintiff by making her work environment increasingly miserable after she rebuffed his advances in August 2018. Plaintiff states that after the first incident of harassment in August 2018, Mr. Longbrake would put his hands on her and give her pointed compliments about her appearance. (Doc. 25, Exh. 15, 26:20-21). However, Plaintiff notes that Mr. Longbrake's tone changed after August 21, 2018. *Id.* at 40:22-24. From that point forward, Mr. Longbrake became hostile, yelled at Plaintiff and used his body to intimidate her. *Id.* at 20:9-23. Mr. Longbrake also prohibited Plaintiff from working from home and required that she be on time for work no matter the conditions. *Id.* at 43:7-15. For example, even if road conditions were difficult, *i.e.*, snow, ice, etc., Mr. Longbrake still required that Plaintiff arrive to work on time.[2] *Id.* Mr. Longbrake was further in a position to ensure that his veiled threat that Ms. Taylor believed Plaintiff was "useless" and that Plaintiff would lose her job, would come to fruition if she did not accept her advances. *Id.* at 22:1-4. The "concept of *quid pro quo* harassment has largely been abandoned" in favor of an analysis considering adverse employment actions. *See Godin v. Whirlpool Corp.*, No. 05-1227, 132 Fed. Appx. 661, 664 (7th Cir. May 20, 2005)(citing *Wolf v. Northwest Indiana Symphony Soc.*, 250 F.3d 1136, 1141–42 (7th Cir. 2001); *Minor v. Ivy Tech State Coll.*, 174 F.3d

---

[2] A reasonable jury could also arguably find that the cumulative nature of these conditions resulted in a significant change to Plaintiff's conditions of employment, which would likewise amount to an adverse employment action.

855, 857 (7th Cir. 1999)). However, a reasonable jury may find that this testimony supports the conclusion that Mr. Longbrake's participation in the investigation against Plaintiff constituted an adverse employment action because the testimony further demonstrates Mr. Longbrake's ill intent towards Plaintiff.

Based on the record before it, the Court must make the following inferences in favor of Plaintiff: (i) that Mr. Longbrake followed through on his August 2018 promise and veiled threat to intervene in Plaintiff's continued employment should she turn down his advances, *see* (Doc. 25, Exh. 15, 22:1-11); and (ii) that Defendant had knowledge of the accusations against Mr. Longbrake through Ms. Bumgarner as of August 2018, but nevertheless chose to permit Mr. Longbrake to investigate the claims against Plaintiff. *See* (Doc. 32, p. 3). The former inference is further supported by the pattern of harassment Plaintiff claims that Mr. Longbrake engaged in; according to Plaintiff, Mr. Longbrake continued to pursue her throughout the Fall only to become hostile towards her after her repeated rejections. *See* (Doc. 25, Exh. 15, 40:22-24). Plaintiff's continued denial of Mr. Longbrake's sexual pursuits provided Mr. Longbrake with the motive necessary to bias Defendant's investigation into Plaintiff's alleged misconduct.

Defendant offers evidence that it terminated Plaintiff for legitimate reasons, *i.e.*, she violated Defendant's expectations for professional conduct. (Doc. 26, p. 20). However, it offers no evidence that Defendant's independent investigation would have arrived at the same conclusion had Mr. Longbrake's participation in the investigation not been considered. The issue of whether Mr. Longbrake's investigation into Plaintiff's alleged

misconduct was the proximate cause of her dismissal therefore remains a genuine issue of material fact. A reasonable jury could thus find for the Plaintiff on this issue; accordingly, the Court cannot grant summary judgment.

### c.   Whether Defendant may Assert the *Faragher-Ellerth* Affirmative Defense

An employer defendant may escape liability for sexual harassment despite a plaintiff's successful prima facie case if that defendant can demonstrate an affirmative defense. *See Hunt,* 931 F.3d at 627-628 (citing *Burlington Indus.*, 524 U.S. at 765). One such defense is the *Faragher-Ellerth* defense, in which a defendant shows, by a preponderance of the evidence, both that it exercised reasonable care to prevent and correct sexually harassing behavior and that the plaintiff failed to take advantage of any preventative or corrected opportunities afforded to them. *See Faragher*, 524 U.S. at 805-806; *see also Burlington Indus.*, 524 U.S. at 765. However, this affirmative defense is only available if the plaintiff did not suffer an adverse employment action. *See Hunt*, 931 F.3d at 627. Defendant does not assert that Plaintiff did not suffer an adverse employment action. Additionally, based on the evidence in the record, a reasonable jury could find that an adverse employment action occurred, thus making this defense unavailable to Defendant. However, even if this defense were available to Defendant, genuine disputes of material fact remain as to whether Defendant either exercised reasonable care to correct

Mr. Longbrake's behavior or that Plaintiff failed to take advantage of corrective opportunities afforded her.

When considering whether a defendant exercised reasonable care, the Court considers whether the Defendant maintains active preventative measures, including a comprehensive harassment policy, and whether any actions taken resulted in the cessation of the harassment. *See Hunt*, 931 F.3d at 630. Defendant does maintain a comprehensive sexual harassment policy, including steps for the reporting and investigation of alleged harassment. (Doc. 32, Exh. D). However, a reasonable jury could conclude that the Defendant failed to follow its policy in this case. Though Plaintiff asserts that she told Ms. Bumgarner that Mr. Longbrake harassed her on August 21, 2018, Ms. Bumgarner took no corrective action. (Doc. 32, p. 3). Plaintiff also attempted to discuss Mr. Longbrake's behavior with Ms. Boswell; however, Ms. Boswell was not able to find time to meet with her, despite Plaintiff explicitly asking Ms. Boswell to make time for such a meeting. (Doc. 26, p. 10). A reasonable jury could thus conclude that the Defendant failed to act in response to Plaintiff's allegations and thus did not exercise reasonable care.

The second element of the *Faragher-Ellerth* defense requires that the defendant show that the plaintiff unreasonably failed to take advantage of preventative opportunities. *See Hunt*, 931 F.3d at 631. This test is a functional one. The Court considers whether an employee "adequately alerted [the] employer to the harassment . . . not whether [the employee] followed the letter of the reporting procedures set out in the employer's harassment policy." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952 (7th Cir.

2005). Here, Defendant's policy requires that an employee alleging harassment immediately discuss the incident with a supervisor, director, or with human resources. (Doc. 32, Exh. D, p. 2). Specifically, the policy states: "[a]s an accurate record of objectionable behavior is necessary to resolve a complaint of harassment, all complaints of harassment, sexual or otherwise, must be reduced to writing by *either* the reporting individual or the individual(s) designated to receive the complaint." *Id.* (emphasis added).

Although Plaintiff informed Ms. Bumgarner of the harassment on August 21, 2018, Plaintiff did not reduce the incident to writing. However, Plaintiff did not bear the burden of placing her complaint in writing alone; Defendant's harassment policy explicitly provides that Ms. Bumgarner, as the reporting individual, also bears the responsibility of reducing Plaintiff's report to writing. Furthermore, Plaintiff's explicit and immediate statement to Ms. Bumgarner served to alert Defendant of the alleged harassment. Per Defendant's policy, Ms. Bumgarner then had the responsibility to investigate Plaintiff's claims, though she did not do so. *Id.* at p. 2. A reasonable jury could therefore find that Defendant did not exercise reasonable care and that Plaintiff adequately followed the reporting procedures Defendant made available to her. Summary judgment is therefore denied as to Count I of Plaintiff's complaint.

## II.    Plaintiff's Retaliation Claim

Defendant asserts that Plaintiff's claim for retaliation pursuant to Title VII must fail because Plaintiff cannot show that Defendant's legitimate reasons for terminating her employment were pretextual. (Doc. 26, p. 19). An employer is prohibited from retaliating against an employee for reporting sexual harassment under Title VII. *See Harden v. Marion County Sheriff's Dept.*, 799 F.3d 857, 861 (7th Cir. 2015). In order to succeed on a claim for retaliation, a plaintiff must show that: (i) he or she engaged in a protected activity, (ii) that he or she suffered a materially adverse employment action, and (iii) that there was a causal link between the protected activity and the adverse action. *Id.* at 861-862. However, courts recognize that evidence of a causal link between the protected activity and an adverse employment action may be difficult to prove other than by circumstantial evidence. Accordingly, a plaintiff may succeed on a claim for retaliation by applying a method of analysis first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-801 (1973).

Under the *McDonnell-Douglas* test, a plaintiff alleging retaliation must first show that: (i) he or she engaged in protected activity; (ii) the plaintiff's performance met the defendant's legitimate expectations; (iii) the defendant took an adverse action against the plaintiff; and (iv) the defendant treated similarly-situated persons outside of the protected class more favorably. *See Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate legitimate, non-discriminatory reasons for its actions. *See*

*Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007). The plaintiff may then attack those reasons as a pretext for discrimination. *See Hossack*, 492 F.3d at 860.

"Pretext" is more than a decisionmaker's mistake; instead, a pretext is a lie, *i.e.*, "specifically a phony reason for some action." *Smith v. Chicago Transit Authority*, 806 F.3d 900, 905 (7th Cir. 2015) (internal quotations omitted). Unlike the required analysis for determining whether Defendant took an adverse employment action against Plaintiff because of Mr. Longbrake's alleged bias, the framework for this analysis is necessarily narrower. Plaintiff must show that Defendant took action against her because *it* carried discriminatory animus. If the proffered reason, "even if actually present to the mind of the [decisionmaker], wasn't what induced him to take the challenged . . . action, it was a pretext." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006). An evaluation of context is essential to determining whether a defendant's stated reason is "fishy enough to support an inference that the reason must be discrimination." *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011).

Defendant claims that it had legitimate reasons for terminating Plaintiff's employment. Specifically, by concocting a scheme to get another employee fired, Plaintiff breached Defendant's expectations of professionalism. (Doc. 26, p. 16). Plaintiff does not respond to Defendant's allegations, and the Court therefore takes these claims as undisputed. *See, e.g.*, *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995)(noting that a failure to respond to claims on summary judgment constitutes an admission that there are no undisputed material facts). According to Defendant, Plaintiff and Ms. Allen devised a

plan to "get" Ms. McCowen. This plan involved claiming that Ms. McCowen violated HIPAA by discussing a patient's private medical information and asserting that her timecard was fraudulently fixed to display only on-time arrivals. (Doc. 25, Exh. 3, p. 3-4). Plaintiff offers no evidence that this reason for her dismissal is pretextual other than her own belief that she was fired for retaliatory reasons. (Doc. 24, Exh. 15, p. 100:6-7). In fact, Plaintiff acknowledges she was fired for precisely the reasons advanced by the Defendant. *Id.* at 99:3-100:2. Accordingly, summary judgment is granted in Defendant's favor on Count II of Plaintiff's complaint.

## Conclusion

For the above-stated reasons, Defendant's motion for summary judgment (Doc. 25) is **GRANTED in part and DENIED in part.** Summary judgment is **DENIED** as to Count I of Plaintiff's complaint. However, summary judgment is **GRANTED** as to Count II of Plaintiff's complaint.

**IT IS SO ORDERED.**

**DATED:  September 28, 2021.**

Digitally signed
by Judge Sison 2
Date: 2021.09.28
09:41:25 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**